52 F.3d 46
 34 U.S.P.Q.2d 1537
 TEXTILE DELIVERIES, INC., Plaintiff-Counterclaim-Defendant-Appellee,
Textile Delivery of New Jersey, Inc. & Stag Delivery, Inc.,
Plaintiffs-Appellees,
v.
LAWRENCE STAGNO & Stag Motor Lines, Inc.,
Defendants-Counterclaim-Plaintiffs-Appellants,
TEXTILE DELIVERY OF NEW YORK, INC., Defendant-Appellant,
v.
COSMO CATANIA & James Catania, Counterclaim-Defendants-Appellees.
 No. 918, Docket 94-7640.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 14, 1994.
Decided April 17, 1995.
 
 Stephen J. Springer, Philadelphia, PA (Sally J. Garber, Kellie Ann Allen, LaBrum & Doak, Philadelphia, PA, and Jack M. Bernard, Philadelphia, PA, of counsel), for appellants.
 Douglas P. Catalano, New York City (Neil G. Sparber, Catalano & Sparber, New York City, of counsel), for appellees.
 Before: FEINBERG, VAN GRAAFEILAND and WALKER, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 This is an appeal from a judgment of the United States District Court for the Southern District of New York in favor of Textile Deliveries, Inc., Textile Delivery of New Jersey, Inc. and Stag Delivery, Inc., trucking companies owned and operated by Cosmo and James Catania, and against Lawrence Stagno and two companies owned and operated by Stagno, Textile Delivery of New York, Inc. and Stag Motor Lines, Inc. The judgment, in the amount of $797,932, followed a jury trial before Judge Charles Metzner. We affirm the finding of liability but remand for retrial on the issue of damages unless plaintiffs agree to remit that portion of the damage award in excess of $258,254.
 
 
 2
 Cosmo Catania formed Textile Deliveries, Inc. in 1959. In 1978, Lawrence Stagno, Catania's nephew, began working for the Catanias at Textile Deliveries' Brooklyn office. Shortly thereafter, Cosmo Catania formed Stag Delivery, Inc. to expand Textile Deliveries, Inc.'s operations in the New York City Garment Center. In 1982, after a position opened in Textile Deliveries' Garment Center branch, Cosmo Catania asked Stagno to fill it. This was accomplished pursuant to an oral agreement, the exact terms of which are now in dispute.
 
 
 3
 According to the Catanias, they agreed to refer all of their deliveries in the Garment Center area to Stagno, and Stagno would keep the profits from these deliveries so long as he managed the Garment Center business and paid the Catanias 3/38ths of the revenue he received from Billings Freight Systems, the Catanias' largest customer. In addition, Stagno was not to operate outside the Garment Center and the Catanias were not to compete against Stagno in the Garment Center.
 
 
 4
 Stagno's version of the 1982 agreement was substantially different. He maintained that he purchased the Garment Center business from Cosmo Catania for $30,000 and a promise to remit 3/38ths of Billings' revenues for a period of two years. In fact, however, Stagno made the payments from 1982 until December 1987. When Stagno stopped paying in 1987, Textile Deliveries, Inc. opened a terminal in the Garment Center. Stagno then decided he wanted to go back to the agreement and resumed the payments, following which the Catanias closed the Garment Center terminal they had opened. Thereafter, Stagno made the payments until May 1989, when he once again discontinued them. In September 1989, the Catanias reopened a terminal in the Garment Center area and it has since remained opened.
 
 
 5
 When Stagno again ceased making payments in 1989, the Catanias commenced the instant action. They contended that Stagno breached the agreement by discontinuing payments and by doing business outside the Garment Center with a number of long-term customers of the Catanias. As a basis for federal court jurisdiction, the Catanias alleged violations of the Lanham Act, 15 U.S.C. Sec. 1125. Relying on the doctrine of pendent jurisdiction, they included a number of state causes of action in their complaint, including breach of contract, unfair trade practices, violations of N.Y.Gen.Bus.L. Secs. 133, 349 & 350, fraudulent and infringing misuse of corporate names, unfair competition, failure to make agreed-upon reports, falsification of such reports, interference with plaintiffs' customer relations, deceptive and false advertising, conversion of property, etc. Prior to trial, Stagno moved unsuccessfully to dismiss the Lanham Act cause of action for failure to state a claim. He also moved to dismiss the pendent state claims, but this motion too was denied. However, most of plaintiffs' state law claims were denied or withdrawn by the first day of trial, and by the end of the trial, the only state law claim that remained was the one for breach of contract.
 
 
 6
 Despite the fact that the district court dismissed the Lanham Act cause of action at the close of the plaintiffs' case, it retained jurisdiction over the breach of contract claim. The district court sent this claim to the jury together with Stagno's counterclaim for alleged unjust enrichment based upon payments allegedly made to plaintiffs under duress between May 1984 and May 1989. The jury rejected the defendants' counterclaim and awarded Textile Deliveries, Inc., Textile Delivery of New Jersey, Inc. and Stag Delivery, Inc. judgment against Lawrence Stagno, Textile Delivery of New York, Inc. and Stag Motor Lines, Inc. in the sum of $797,932.
 
 
 7
 Appellants assert several grounds for reversal which we find unpersuasive. The first of these challenges the district court's decision to assume and retain jurisdiction in the face of what appellants contend was an obviously defective claim under the Lanham Act. The record shows that on May 15, 1990 the defendants moved before District Judge John Keenan to dismiss the Lanham Act claim. Judge Keenan denied the motion, observing as he did so that the corporate names adopted by Stagno were "practically identical" with those that the Catanias had put to senior use and that the type of services and areas served by the parties likewise were identical. Although three and a half years elapsed between Judge Keenan's decision and the start of trial, during which time extensive pretrial proceedings were conducted, defendants did not move again to dismiss the Lanham Act cause of action until the end of the plaintiffs' case, at which time the motion was granted. In denying defendants' post-trial motion for an award of attorney's fees under the Lanham Act, Judge Metzner said:
 
 
 8
 Defendants claim that plaintiffs manufactured their Lanham Act claim solely for the purpose of creating jurisdiction in the federal court, that plaintiffs had no good faith basis for bringing the Lanham Act claim, and that plaintiffs did not make a good faith attempt to prove any of the elements of a Lanham Act violation. The court disagrees.
 
 
 9
 Counsel for plaintiffs, in his opening statement to the jury, stated that he would prove that the similarity between the plaintiffs' names and the corporate defendants' were "inescapable," and that they could and indeed had caused confusion. A reading of the caption of this case clearly shows the basis for the claim. During the course of trial, plaintiffs attempted to prove that their descriptive names had developed secondary meaning, thus entitling them to protection under the Lanham Act, and that the defendants had used these names in a manner which caused confusion. In an attempt to prove secondary meaning, plaintiffs introduced advertising brochures, jackets with the company name on them, promotional pens, advertisements in industry magazines, and letters from satisfied customers. Plaintiff [sic] also offered testimony that their name was advertised on their 15 to 20 trucks.
 
 
 10
 In an effort to show a likelihood of confusion, plaintiffs pointed out the degree of similarity between the plaintiffs' and defendants' names, introduced evidence that defendant Stagno forged plaintiff Cosmo Catania's name in connection with the incorporation of one of the defendant companies in order to show that defendants did not adopt plaintiffs' name in good faith, and also introduced evidence which purportedly showed that Billings Freight, a customer of both plaintiffs and defendants, was actually confused by the defendants' use of plaintiffs' name.
 
 
 11
 While plaintiffs ultimately failed to present enough evidence to prove their Lanham Act claim at trial, the court is satisfied that their failure was not a result of bad faith or a baseless and capricious attempt to gain federal jurisdiction.
 
 
 12
 Judge Metzner's conclusion has ample support in the record. Accordingly, the fact that the Lanham Act claim ultimately was dismissed did not require that the pendent state claims also be dismissed. Where, as here, the interests of judicial economy, convenience and fairness favor a district court's retention of pendent jurisdiction, the court may retain jurisdiction over related state claims with which the court has become familiar. See Raucci v. Town of Rotterdam, 902 F.2d 1050, 1054-55 (2d Cir.1990); Enercomp, Inc. v. McCorhill Publishing, Inc., 873 F.2d 536, 545 (2d Cir.1989).
 
 
 13
 We find no prejudicial error in the district court's evidentiary rulings which permitted counsel for the plaintiffs to cross-examine Stagno concerning his financial condition after Stagno had opened the door to this subject. Likewise, the district court did not abuse its discretion in limiting Stagno's counsel's examination of the Catanias concerning asserted variances between certain allegations in the complaint and the proof at trial. Stagno's counsel could have offered the complaint in evidence had he deemed it worth while.
 
 
 14
 We are left then with the issue of damages, the one issue whose resolution has given Stagno legitimate cause to complain. The evidence below followed an unusual pattern in that the only proof concerning the amount of damages came from an expert witness called by the plaintiffs. The expert witness prepared a summary table, Exhibit 63, showing the damages allegedly sustained by the plaintiffs for the years 1982 to 1993. In response to a question from the jury as to whether the expert's calculation of damages through 1993 constituted "the only judgment amount allowed," the district court, apparently influenced by the fact that the expert's calculation was the only evidence of damages in the case, replied "Yes." Subsequently, the jury asked the court, "[i]f the jury determines that the plaintiffs are entitled to damages, but thinks that the damages should cease at a date prior to December 1993, can we award less money than the plaintiffs request?" Following extensive briefing and oral argument, the district court on the following day recalled the jury and instructed them as follows: "My answer to that is yes, you may. This may sound to be conflicting with the answer I gave to the second question on court exhibit 3 when I said that you would be governed by 63. There is a modification. You are now told you may award an amount less than 63 calls for." Shortly thereafter, the jury returned a verdict for the full amount of damages shown on plaintiffs' Exhibit 63.
 
 
 15
 Stagno contends that this award was the result of the district court's confusing charge on damages. We need not decide that issue because the evidence clearly established that the contract between the parties was terminated no later than September of 1989, when Stagno had ceased payments and the Catanias had reopened their Garment Center branch, and therefore no damages should have been awarded after that time. Stagno's counsel suggests that if a remittitur is ordered, it should be for the damages in excess of $258,254. See Appellants' Reply Brief, p. 15-16. This would eliminate the damages shown on Exhibit 63 for the full years 1990 to 1993 and for one quarter of 1989. We find this suggestion persuasive.
 
 
 16
 Because this is a clear case of liability, and the accuracy of the damage figures prior to September 1989 is not challenged, this case lends itself readily to a remittitur. Accordingly, if plaintiffs Textile Deliveries, Inc., Textile Delivery of New Jersey, Inc. and Stag Delivery, Inc. agree to remit all damages in excess of $258,254, we will affirm a judgment in that amount. If the plaintiffs refuse to make such remittitur, we direct that the case be retried solely on the issue of damages. We affirm on the issue of liability.